EDWIN W. BULLARD *vs.* LAWRENCE W. EAMES & another.

Hampden.    September 21, 1914. — October 23, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Contract,* Construction, Performance and breach, Rescission.  *Damages,* In contract.  *Practice, Civil,* Appeal.

Where three separate agreements relating to the same subject matter are made and executed between the same parties at the same time "as parts of one transaction," the rights of the parties are the same as if all the agreements had been embodied in the same instrument.

In an action by the inventor of certain devices for use upon automobiles for a breach of a contract in writing, by which the defendant agreed to pay. $2,500 for one thousand sets of the devices manufactured by the plaintiff, having paid $300 in advance at the making of the contract, it appeared that the contract, as interpreted, further provided that, after the one thousand sets of the devices had been manufactured and paid for, the plaintiff was to be employed by the defendant to manufacture the devices, and was to make a conditional assignment to the defendant of his rights to the patents upon his inventions. It further appeared that the plaintiff had manufactured and offered to the defendant in accordance with the terms of the contract four hundred sets of the devices, which the defendant refused to accept or pay for, whereupon the plaintiff notified the defendant in writing that he terminated the contract and should hold the defendant liable in damages for all loss caused to the plaintiff by the defendant's breach of it.  It also appeared that the plaintiff before he gave this notice had been ready and willing to carry out the terms of the contract. *Held,* that the plaintiff had not rescinded the contract but on the contrary sought to enforce its terms by demanding damages, he being excused from further performance by the defendant's breach.

In the same action, it was *held,* that the defendant was liable for the amount of the contract price diminished by the cost of the six hundred sets of the devices not manufactured, the cash payment of $300, the amount received by the plaintiff from the sale of sets which the defendant refused to accept and the value of the unsold sets, it having been the duty of the plaintiff, when the defendant refused to accept the four hundred sets, to exercise reasonable diligence to sell them at the best price obtainable and to credit the proceeds to the defendant.

Where the record in an action at law shows that an entry of judgment improperly was made while exceptions were pending, this does not show the existence of any judgment from which an appeal could have been taken and an attempted appeal must be dismissed.

CROSBY, J.  This is an action to recover damages for the breach of an executory contract entered into by the parties.  The de-

fendant Eames having been defaulted in the Superior Court, the case comes before this court upon the exceptions of the defendant Nash.

The plaintiff, being the owner of certain inventions called controllers and regulators, for use upon automobiles, upon which inventions applications for letters patent were pending, on April 27, 1911, entered into three written agreements with the defendants, as follows:

(A) A contract wherein the plaintiff agreed to manufacture for the defendants one thousand sets of controllers and regulators for the sum of $2,500 upon the terms therein set forth;

(B) A contract whereby, under certain conditions and contingencies, the plaintiff was to be employed by the defendants (or by a proposed corporation which they might organize) to manufacture the devices above referred to; and

(C) A contract whereby the plaintiff made a conditional assignment to the defendants of his rights to patents upon said inventions.

These three instruments A, B and C "were simultaneously executed and delivered as parts of one transaction."

The plaintiff in the first count of his declaration declares upon contract A, and avers performance on his part and a breach thereof by the defendants. There is a sufficient averment of damages occasioned by such breach.

The second count declares upon contract B, and otherwise is similar to the first count.

The case was referred to an auditor,* whose findings of fact it was agreed should be final. The auditor found that "during the month of June, 1911, and before the giving of the notice referred to, [the defendants] had violated their part of contract A by failure to accept deliveries and make payments as therein provided." He further found that there was due the plaintiff, by reason of the breach of the contract A, the sum of $1,020 as damages.

Afterwards the case was heard by a judge of the Superior Court † sitting without a jury, at which hearing "no evidence

---

* James L. Doherty, Esquire.

† *Wait,* J.

was introduced by either party other than said 'auditor's report prepared in answer to order of recommittal,' and said patent assignment marked 'C.' The judge found for the plaintiff upon the first count in the sum of $1,104.97, and for the defendants upon the second count."

The judge also found "that contracts B and C did not at any time go into effect so that their provisions attached or affected the plaintiff's rights under the contracts."

In order to determine the questions raised by the exceptions it is necessary to consider the scope and effect of the contracts entered into by the parties. The facts that three separate agreements were made and executed "as parts of one transaction" would not seem to affect the legal rights of the parties in any way different from that which would have resulted if all had been embodied in a single instrument.

From the nature of the agreements between the parties as recited in contracts A, B and C, it is clear that the provisions of contract A were first to be carried out; that the plaintiff was absolutely bound to manufacture one thousand sets of the devices comprising one regulator and one controller, the same to be manufactured and delivered within the time stipulated in the contract; and that by the terms of the contract the defendants were equally bound to accept such deliveries and pay for them as therein stipulated.

The provision for the manufacture of one thousand sets for $2,500 was an entire contract. Although the devices were to be delivered at the rate of one hundred sets a week, with a provision for an advance payment of $300 by the defendants to the plaintiff at the time of the execution of the contract, and certain weekly payments were thereafter to be made, yet these provisions do not in any way change the nature of the contract or tend to show that it is separable, as where different and distinct articles are sold for different prices. *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474. *Stewart* v. *Thayer,* 168 Mass. 519.

The undisputed facts and the finding of the auditor show that the plaintiff in accordance with the contract manufactured and had ready for delivery four hundred sets before mailing to the

defendants the notice of July 1, 1911,* but that the defendants, although duly notified by the plaintiff, failed and refused to accept any of the sets or to pay for them.

We are of opinion that contract A is absolute in its terms and provides for the unconditional manufacture of the first one thousand sets, and is not affected or modified by the provisions of contracts B or C. It is true that contract B provides that if the defendants do not employ the plaintiff to manufacture the devices under a contract the defendants will, so long as they hold the rights and inventions assigned to them by the plaintiff, employ him and pay him a salary of $1,500 for at least one year "after said Bullard ceases to manufacture said devices by contract." When the plaintiff notified the defendants that he terminated the contract A because of their refusal to accept and pay for the four hundred sets manufactured, and refused further to manufacture sets, it does not follow that thereafter he had ceased "to manufacture said devices by contract" within the terms of contract B; the defendants were still liable to accept and pay for one thousand sets, at least, before the provisions of contract B became operative and changed the status of the plaintiff from a contractor to an employee upon a salary.

For these reasons, the contention of the defendant Nash that

---

* The auditor found that this notice was delivered by the plaintiff to each of the defendants and was as follows:

"If the contract executed by yourselves on the one part and myself on the other part, in reference to inventions and patents on high and low light devices has any force as a contract, and if a termination of the same requires a notice in writing, you are hereby notified that said contract is terminated, and if said instrument has any force as a contract and I am entitled under the same to collect damages by reason of your utter and absolute failure to perform said contract or to comply with any of the terms of the same, I will look to you to reimburse me for all loss and damage I have suffered or may suffer by reason of such failure on your part.

"In the matter of the contract for the manufacture of one thousand set of the high and low light devices, I have complied with all the terms on my part and will look to you to pay for the same according to the terms of your agreement. Said contract is also terminated as to all deliveries to be made under the same after July 1st, 1911, and unless payment is made for those prepared for you under said contract up to and including July 1st, 1911, an action will be brought to collect for the same."

the plaintiff was employed upon a salary after July 1, 1911, cannot be sustained.

The judge having found that the defendants had violated contract A, and that the plaintiff was ready and willing to carry out its terms before he wrote to the defendants on July 1, 1911, we are of opinion that the finding in favor of the plaintiff upon the first count was well warranted; the second paragraph of the letter or notice it is agreed relates to contract A; it cannot be regarded as a rescission of the contract by the plaintiff; it plainly appears that he terminates the contract because of the refusal of the defendants to comply with its terms. He avers that he has fully performed his part, and notifies the defendants that he will look to them to pay for the sets according to the agreement. It therefore clearly appears that instead of rescinding the contract he claims his rights under it and will hold the defendants for breach of it. The plaintiff, being without fault, the refusal or failure of the defendants to perform their part of the agreement gave to the plaintiff the right either to sue for breach of the contract, or, if he so elected, to rescind it and sue on a *quantum meruit* for the value of the sets actually manufactured, just as if the special contract had not existed. Under these circumstances he would be excused from further performance on his part. *Earnshaw* v. *Whittemore,* 194 Mass. 187. *Brown* v. *Woodbury,* 183 Mass. 279. *Whiteside* v. *Brawley,* 152 Mass. 133, 134.

The plaintiff's remedy is not limited, as the defendants contend, to an action upon a *quantum meruit,* because contract A is wholly independent of contract B, and imposes upon the defendants the absolute and unqualified obligation to accept and pay for at least one thousand sets of the devices when manufactured by the plaintiff. Until this contract has been fully performed the provisions of contract B for the employment of the plaintiff by the defendants upon a salary do not become operative or in any way affect the rights and obligations of the parties under the contract described in the first count. *Fitzgerald* v. *Allen,* 128 Mass. 232. *Hapgood* v. *Shaw,* 105 Mass. 276. *Mullaly* v. *Austin,* 97 Mass. 30.

The rule of damages followed by the auditor and adopted by the trial judge was correct. That is to say, the plaintiff is entitled to recover such damages as were fairly within the contemplation

of the parties. Accordingly the defendants are chargeable with the contract price less the cost of six hundred sets not manufactured, the cash payment of $300, the amount received from the sets sold, and the value of the unused sets. *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352. *John Hetherington & Sons, Limited,* v. *William Firth Co.* 210 Mass. 8. *Kostopolos* v. *Pezzetti,* 207 Mass. 277.

After the defendants had refused to accept and pay for the four hundred sets manufactured, the plaintiff was entitled to sell them for the best price obtainable and credit the proceeds to the defendants. It was his duty to exercise reasonable diligence to minimize the damages. He could recover only for the direct consequences of the breach of contract by the defendants, and not for damages that could have been avoided by the exercise of reasonable precautions on his part. *Fairfield* v. *Salem,* 213 Mass. 296.

The true construction to be placed upon the contracts and their relations to each other, and upon the notice given by the plaintiff, disposes of the requests for rulings made by the defendant Nash. As the trial judge was warranted in finding that the plaintiff was entitled to recover for a breach of contract A, and that the notice of July 1, 1911, did not operate as a rescission of the contract, none of the defendants' requests for rulings could have been given.

The record* shows that judgment improperly was entered while the exceptions were pending. The appeal therefore is not properly before us.

> *Exceptions overruled.*
> *Appeal dismissed.*

The case was submitted on briefs.

*A. L. Green & F. F. Bennett,* for the defendant Nash.

*J. B. Carroll, W. H. McClintock & J. F. Jennings,* for the plaintiff.

---

* Among the printed copies of documents annexed to the bill of exceptions was a statement signed by the clerk of courts of an entry of judgment for the plaintiff and an appeal by the defendant.